IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

JAY CARPER,

            Plaintiff,

v.                                       CIVIL ACTION NO.   2:14-cv-12114

CLAY COUNTY BOARD OF HEALTH, et al.,

            Defendants.

**MEMORANDUM OPINION AND ORDER**
(*Motions for Summary Judgment*)

Pending before the court is the defendants' Clay County Board of Health, Clay County Health Department, Nancy Cottrell, Joyce McLaughlin, Linda Klotzbach, Dr. Leela Patel, Clay County Commission, and Peter Triplett's Motion for Summary Judgment [Docket 64][1] and the plaintiff's Motion for Summary Judgment Against the Clay County Board of Health Defendants [Docket 83]. For the reasons explained below, the defendants' motion [Docket 64] is **GRANTED**, and the plaintiff's motion [Docket 83] is **DENIED**.

**I. Factual Background**

This case arises out of the plaintiff Jay Carper's discharge from his at-will employment with the Clay County Health Department (also referred to as the "Department"). Mr. Carper claims

---

[1] In my prior Order dated June 8, 2015, I denied this motion after striking its oversized supporting memorandum from the docket. (June 8, 2015 Order [Docket 76], at 4). The defendants subsequently filed a motion to refile their dispositive pleadings, which I granted at the Motion Hearing held on June 25, 2015, at 11:00 a.m. ("Motion Hearing"). The defendants have since filed a new supporting memorandum in compliance with the page limitations in the Local Rules of Civil Procedure. (*See* Mem. of Law in Supp. of Defs. Clay Cnty. Bd. of Health, Clay Cnty. Health Dep't, et al., Mot. for Summ. J. [Docket 81]). Therefore, I reconsider this motion here.

1

that he was fired after being falsely accused of viewing pornography on his work computer. More specifically, he asserts that someone logged-in to his unique identifier using his password to view pornographic websites in order to retaliate against him for reporting instances of misconduct within the Department. (*See* Compl. [Docket 1], at 12, 13). Before Mr. Carper was fired, the Department provided him a "predetermination conference," and Mr. Carper participated in subsequent grievance proceedings. (*See id.* at 20, 23). However, he alleges that the Department still did not give him an adequate chance to clear his name because dismissal procedures were not properly followed. (*See, e.g.*, *id.* at 13). Mr. Carper also claims that Clay County Health Department employees improperly released the allegations behind his termination to the public, damaging his reputation as a result. (*See id.*). Articles about the situation were published online by non-governmental news sources, (*e.g.*, Mem. of Law in Supp. of the Pl.'s Mot. for Summ. J. [Docket 84], at 3-6 (www.clayberry.org blog); *id.* (The Communicator); *id.* at 7 (Starcasm); *id.* (www.examiner.com)), and, as he explained at the Motion Hearing, Mr. Carper's dismissal was a popular topic of discussion around the community. Clay County Board of Health employees initially accused Mr. Carper of attempting to view child pornography at work, but law enforcement found no evidence of such allegations. (*See* Compl. [Docket 1], at 7).

Seven defendants remain in this case—(1) the Clay County Board of Health, Clay County Health Department; (2) Nancy Cottrell, individually and in her official capacity as acting Administrator of the Clay County Health Department; (3) Joyce McLaughlin, individually and in her official capacity as President or acting Director of the Clay County Board of Health; (4) Linda Klotzbach, individually and in her official capacity as former Administrator of the Clay County Health Department; (5) Dr. Leela Patel, individually and in her official capacity as an employee

or Local Health Officer of the Clay County Health Department; (6) the Clay County Commission; and (7) Peter Triplett, individually and in his official capacity as an employee of the Clay County Clerk's Office. (*See id.* at 1-2).[2] Mr. Carper brings the following causes of action against all defendants: (1) 28 U.S.C. § 1983 violation of due process; (2) defamation of character; (3) slander; (4) defamation *per se*; and (5) intentional infliction of emotional distress.[3] He additionally brings the following claims against only the Clay County Health Department: (1) violation of the West Virginia Whistleblower Act; (2) wrongful discharge; and (3) retaliatory discharge. Mr. Carper alleges that each defendant was involved in the circumstances surrounding his dismissal in some form. I will discuss the lengthy details of such claims only to the extent they are material to this opinion.

Mr. Carper was ultimately dismissed from employment effective September 8, 2011. (*Id.* at 10). In August of 2012, Mr. Carper brought a suit in the Circuit Court of Clay County, West Virginia, concerning his dismissal. (*See* Circuit Ct. of Clay Cnty. Compl. [Docket 64-32]).[4] He alleged the same claims against the Clay County Board of Health, Ms. Cottrell, Ms. McLaughlin, Ms. Klotzbach, and Dr. Patel in state court as here, except his § 1983 claim is new to the instant matter. (*See* Circuit Ct. of Clay Cnty. Order [Docket 64-33], at 4-5).[5] In January of 2013, the state

---

[2] The docket lists two additional defendants—Mike Pierson and Jerry Linkinogger. However, the court believes such defendants to be encompassed by the Clay County Commission. The complaint's caption groups Mr. Pierson and Mr. Linkinogger under the Clay County Commission. (*See* Compl. [Docket 1], at 2). Moreover, Mr. Pierson and Mr. Linkinogger are not mentioned in the body of the complaint.

[3] The complaint asserts separate causes of action for intentional infliction of emotional distress and outrage. However, at the Motion Hearing, Mr. Carper conceded that these two claims were the same tort. *See Travis v. Alcon Labs., Inc.*, 504 S.E.2d 419, 424 (W. Va. 1998).

[4] The defendants contend that Mr. Carper filed his state court complaint on August 14, 2012. (Defs.' Clay Cnty. Bd. of Health, Clay Cnty. Health Dep't, et al., Resp. in Opp'n to Pl.'s Mot. for Summ. J. [Docket 87], at 12). However, the copy of Mr. Carper's complaint attached to the defendants' motion does not contain a date. (*See* Circuit Ct. of Clay Cnty. Compl. [Docket 64-32]). I must, therefore, rely on the defendants' statement as to when this complaint was filed. The state court order dismissing the case is consistent with an August 2012 filing, however, as it mentions motions that were filed in September of 2012. (Circuit Ct. of Clay Cnty. Order [Docket 64-33], at 1).

[5] In state court, Mr. Carper also brought claims for libel and negligent infliction of emotional distress against these

3

judge dismissed the Clay County Board of Health without prejudice for Mr. Carper's failure to exhaust administrative remedies. (*See id.* at 10-11). The state judge dismissed Ms. Cottrell, Ms. McLaughlin, Ms. Klotzbach, and Dr. Patel with prejudice after finding that they were immune from suit. (*See id.* at 6-9). Mr. Carper did not appeal this decision.

During this time, Mr. Carper was also proceeding through grievance hearings with the Clay County Health Department. (*See, e.g.*, Compl. [Docket 1], at 23). The final grievance decision was issued against him on July 15, 2013, by the Administrative Law Judge. (Mem. of Law in Supp. of Defs. Clay Cnty. Bd. of Health, Clay Cnty. Health Dep't, et al., Mot. for Summ. J. [Docket 81], at 5-6). At the Motion Hearing, Mr. Carper explained that he appealed the grievance decision to the Circuit Court, but the appeal was dismissed after being filed three days late.

On March 11, 2014, Mr. Carper filed the instant complaint. (Compl. [Docket 1]). As compared to his prior suit in the Circuit Court of Clay County, Mr. Carper added the Clay County Commission and Mr. Triplett as defendants.[6] He also added his § 1983 claim. Both the defendants and Mr. Carper move for summary judgment.

## II. Standard of Review

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

---

defendants. (*See* Circuit Ct. of Clay Cnty. Order [Docket 64-33], at 5). He additionally asserted whistleblower, wrongful discharge, and retaliatory discharge claims against Ms. Cottrell, Ms. McLaughlin, Ms. Klotzbach, and Dr. Patel in state court. (*See id.* at 4-5).

[6] In their memorandum, the defendants only recognize Mr. Triplett as a new defendant. However, the Clay County Commission is also not listed in the caption of the state court complaint. (*See* Circuit Ct. of Clay Cnty. Compl. [Docket 64-32], at 1-2). Also, I note that Mr. Carper sued other new defendants in the instant matter; however, I have already dismissed those individuals. (*See* Jan. 16, 2015 Order [Docket 38], at 1).

4

249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

### III. Discussion

#### A. Defendants' Motion for Summary Judgment [Docket 64]

The defendants move for summary judgment on all claims.

##### i. § 1983 Due Process Claim Against All Defendants

The defendants argue that they are entitled to summary judgment on Mr. Carper's § 1983 due process claim. Because Mr. Carper's motion solely addresses this cause of action, I will consider his due process arguments in this section as well. I view the facts in the light most favorable to the nonmoving party, respectively. Mr. Carper alleges that his

> Due Process rights and his right to privacy was [sic] violated by the Clay County Board of Health when the Board released negative disciplinary information to the public; sent his employment file including negative disciplinary information to the West Virginia Board of Nursing without Mr. Carper's authorization; failed to properly investigate whether Mr. Carper actually conducted the computer searches that triggered the Network Violation Reports that were used to terminate

> Mr. Carper's employment; failed to properly counsel Mr. Carper upon notice of the first and second Network Violation Reports; and/or denied a meaningful opportunity to clear his name through failure to provide a meaningful name clearing hearing prior to making the allegations public.

(Mem. of Law in Supp. of Pl.'s Mot. for Summ. J. [Docket 84], at 2).

"[T]he first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interested in 'property' or 'liberty.'" *Andrew v. Clark*, 561 F.3d 261, 269 (4th Cir. 2009) (internal quotation marks and citation omitted). I **FIND** that Mr. Carper has failed to demonstrate such an interest here.

### a. Property Interest

First, Mr. Carper does not have a property interest. Typically, an at-will government employee like Mr. Carper has no "protected property interest in continued public employment." *Id.* (internal quotation marks and citation omitted). There is an exception where the employee "may still allege an entitlement to termination 'for cause' if he can show the existence of 'rules and understandings, promulgated and fostered by state officials' promoting such a procedure." *Id.* at 270 (citation omitted). However, Mr. Carper has alleged no such circumstances.

### b. Liberty Interest

Also, Mr. Carper has not demonstrated that he has a protected liberty interest. As seen from the Motion Hearing and the briefing, Mr. Carper primarily makes two arguments in support of a liberty interest that center around two cases: *Sciolino v. City of Newport News, Virginia*, 480 F.3d 642 (4th Cir. 2007) and *Billings Gazette v. City of Billings*, 313 P.3d 129 (Mont. 2013). I am not persuaded by either contention.

#### 1. *Sciolino* Argument

6

In *Sciolino*, the Fourth Circuit Court of Appeals recognized a type of liberty interest that arises in certain employment circumstances. The case involved a police officer who was fired after being accused of "advance[ing] the odometer of his police cruiser approximately 10,000 miles, ostensibly to get a new car sooner." *Sciolino*, 480 F.3d at 645. A letter containing this accusation was placed in his personnel file by his employer. *Id.* The officer brought a § 1983 action against the city and the Chief of Police, "assert[ing] that when discharging him, the city placed in his personnel file false information damaging to his good name without granting him a name-clearing hearing, and so deprived him of liberty rights without due process of law." *Id.* The *Sciolino* court said that a plaintiff does, in fact, "state this type of liberty interest claim under the Due Process Clause, [if he] allege[s] that the charges against him: (1) placed a stigma on his reputation; (2) were made public by the employer; (3) were made in conjunction with his termination or demotion; and (4) were false." *Id.* at 646 (citation omitted).

***Second Element.*** The *Sciolino* court focused on the second element of this four-part test— "the requirement that the charges have been 'made public.'" *Id.* at 646-47 (citation omitted). Unlike Mr. Carper, the officer in *Sciolino* was not arguing that his employer disclosed his charges to the public outright. Rather, he contended that the letter placed in his personnel file satisfied this element. In order to sufficiently state the second element under this theory, the Fourth Circuit held that the officer need allege "a likelihood that prospective employers (i.e., employers to whom he will apply) or the public at large will inspect the file." *Id.* at 650.

Mr. Carper's general allegation that Clay County Health Department employees leaked his information to members of the public sufficiently states this second element of the *Sciolino* test. However, unlike *Sciolino* which concerned a motion to dismiss for failure to state a claim, this

7

case is at the summary judgment stage where mere allegations concerning the above four elements will not suffice. At the Motion Hearing, Mr. Carper explained that only he and the Clay County Health Department had access to the reasons for his termination.[7] Thus, according to him, *someone* from the Department must have leaked this information and started a rumor mill. Mr. Carper argues that a Department employee *must have* made the information public because it ended up on a blog at www.clayberry.org. However, despite these contentions, Mr. Carper was unable to point to any evidence demonstrating that a particular employee, in fact, had committed this act.

Mr. Carper speculates that Mr. Triplett is to blame, but, when asked for evidentiary support at the Motion Hearing, he merely stated that Mr. Triplett did not testify as he had anticipated. In his motion, Mr. Carper bolsters his argument by citing to deposition testimony where Mr. Triplett admits to repeating allegations that he read on the blog while in conversation at a coffeehouse. (*See* Triplett Dep. [Docket 83-4], at 23-25). However, Mr. Carper does not have "concrete evidence" that Mr. Triplett leaked the information from the Department to the public in the first place. *Anderson*, 447 U.S. at 256. At the Motion Hearing, Mr. Carper stated that he didn't know who was behind the public disclosure beyond this conjecture, and he has not presented more than a scintilla of evidence indicating otherwise.[8]

It is undisputed that Clay County Board of Health employees disclosed information concerning Mr. Carper's termination to law enforcement for investigative purposes. However, even Mr. Carper admitted that they were justified in doing so. In fact, Mr. Carper agreed at the Motion Hearing that this disclosure was not problematic.

---

[7] Mr. Carper later conceded that someone from the West Virginia Office of Technology, where monitoring of his computer was conducted, could have had access to the information as well.
[8] At the Motion Hearing, Mr. Carper also stated that he recently received information that a county employee named Kay Hubbard spread the information. However, Mr. Carper pointed to no further evidence supporting this point.

8

In his motion, Mr. Carper attempts to analogize his circumstances to the letter in *Sciolino* by arguing that:

> not only are the allegations publicly available on the Internet today with a simple search for 'Jay Carper,' but the allegations were included in Mr. Carper's personnel file that was sent to the West Virginia Board of Examiners for Registered Professional Nurses . . . The Letter of Admonishment from the West Virginia Board of Examiners for Registered Nurses is presently on file with the Board and readily available through a simple Freedom of Information Act request. Therefore, the allegations against Mr. Carper are reasonably available to potential future employers and would be easily obtained in a simple background check or investigation into Mr. Carper's character.

(Mem. of Law in Supp. of Pl.'s Mot. for Summ. J. [Docket 84], at 10). However, this argument is disingenuous in light of Mr. Carper's statements at the Motion Hearing. At the Motion Hearing, Mr. Carper indicated to the court that his circumstances were somewhat different than those in *Sciolino* because his case alleges public disclosure generally, not a stigmatizing personnel letter. Moreover, even if the Clay County Board of Health forwarded Mr. Carper's personnel file to the West Virginia Board of Examiners for Registered Professional Nurses, it is unclear why this disclosure would be any more objectionable than a disclosure to law enforcement.

In any event, the above argument lacks merit. The Letter of Admonishment was issued by the West Virginia Board of Examiners for Registered Professional Nurses, not by the Clay County Health Department. (Compl. [Docket 1], at 26-27). I have already dismissed the defendant that Mr. Carper sued from that agency, (Jan. 16, 2015 Order [Docket 38], at 8 (dismissing defendant Laura Rhodes)), and Mr. Carper does not have "concrete evidence" that the remaining defendants are liable for damage caused by this communication, *Anderson*, 447 U.S. at 256. Moreover, the Letter of Admonishment was dated September 10, 2013, (Compl. [Docket 1], at 26), almost a year after Mr. Carper made the allegations public by filing his state court complaint. (Defs.' Clay Cnty.

9

Bd. of Health, Clay Cnty. Health Dep't, et al., Resp. in Opp'n to Pl.'s Motion for Summ. J. [Docket 87], at 12).[9] Also, at the Motion Hearing, Mr. Carper moved to dismiss Andy Wadell and Delta Communications, LLC, the only defendants related to online publishing, and I granted his motion. (*See* J. Order [Docket 82], at 1). Because Mr. Carper does not have "concrete evidence" demonstrating that the Clay County Health Department leaked his information to the public, he has also failed to show how the remaining defendants in this case are liable for damage resulting from articles written about him on the Internet. *Anderson*, 447 U.S. at 256.

*Fourth Element.* Even if Mr. Carper had presented more than a scintilla of evidence on this second element, problems remain in demonstrating the fourth element. The fourth element requires the statements made public to be "false." *Sciolino*, 480 F.3d at 646. At the Motion Hearing and in his briefing, however, Mr. Carper stated that it is not possible to prove through the evidence that the accusations were false. (*E.g.*, Pl.'s Mot. for Summ. J. Against the Clay Cnty. Bd. of Health Defs. [Docket 83], at 3 ("The fourth element is physically impossible to prove or disprove because of the actions or inactions of the Clay County Health Department Defendants."); *id.* at 4 ("To date, there is no way to prove the allegations true or false other than an admission by the ultimate wrongdoer which is highly unlikely.")). At one point in the Motion Hearing, Mr. Carper pointed to a few pieces of evidence, namely his own statement that the allegations were false and the testimony of Chris Avis, an employee of the West Virginia Office of Technology who stated that it was not possible to prove that Mr. Carper himself performed the searches, although his log-in and password were used. Even so, this evidence is no more than a scintilla in support of

---

[9] As I noted above, I am relying on the defendants' statement that the state court complaint was filed on August 14, 2012. In any event, Mr. Carper's federal complaint states that he filed his state court case "[p]rior to the issuing of the 'Letter of Admonishment.'" (Compl. [Docket 1], at 27).

10

demonstrating falsity.

Given Mr. Carper's lack of any "concrete evidence" with respect to these two elements of the *Sciolino* test, Mr. Carper has not fulfilled his summary judgment burden in demonstrating a liberty interest under this theory. *Anderson*, 447 U.S. at 256.

### 2. *Billings Gazette* Argument

In addition to his liberty argument under *Sciolino*, Mr. Carper alleges that his privacy interests were violated when the Clay County Health Department made the reasons for his termination public. Mr. Carper primarily relies on *Billings Gazette* here. *See* 313 P.3d 129 (Mont. 2013). First of all, *Billings Gazette* is a case decided by the Supreme Court of Montana. The court is not aware of any federal case or any state case outside of Montana that cites to *Billings Gazette*. I am simply not bound to adopt or be guided by its ruling. Mr. Carper also cites to a case decided by the Supreme Court of Appeals of West Virginia in making this argument, namely *Golden v. Board of Education of the County of Harrison*, 285 S.E.2d 665 (W. Va. 1981). However, I decline to engage in an in-depth analysis of his privacy contention as I find it to be plainly without merit.

First, in his motion, Mr. Carper asks the court to assume that he did, in fact, conduct the pornographic searches on his computer for purposes of this privacy argument; however, for all other intents and purposes, he continues to deny any such accusation. (*See* Mem. of Law in Supp. of Pl.'s Mot. for Summ. J. [Docket 84], at 12, 15). I will not grant relief based on such supposition.

Moreover, as I explain above with respect to *Sciolino*, Mr. Carper cannot point to more than a scintilla of evidence that Clay County Health Department employees actually disclosed the reasons for his termination to the public. Thus, I need not reach the question of whether the

11

defendants hypothetically violated Mr. Carper's privacy interests if they had committed such an act.

Without having demonstrated a protected liberty or property interest at stake, Mr. Carper's § 1983 due process claim fails. The defendants' motion is **GRANTED** with respect to this claim.[10]

### ii. Defamation Claims and Intentional Infliction of Emotional Distress Claim Against Ms. Cottrell, Ms. McLaughlin, Ms. Klotzbach, and Dr. Patel

I now turn to Mr. Carper's other claims, viewing the facts in the light most favorable to him. First, the defamation of character, slander, defamation *per se*, and intentional infliction of emotional distress claims brought against Ms. Cottrell, Ms. McLaughlin, Ms. Klotzbach, and Dr. Patel are barred by the doctrine of res judicata. The United States Court of Appeals for the Fourth Circuit has explained that:

> Preclusion doctrine encompasses two strands: res judicata and collateral estoppel. Res judicata, or claim preclusion, bars the relitigation of any claims that were or could have been raised in a prior proceeding between the same parties. . . . [C]ollateral estoppel, or issue preclusion . . . bars the relitigation of specific issues that were actually determined in a prior action.

*Sartin v. Macik*, 535 F.3d 284, 287 (4th Cir. 2008). The United States Supreme Court has said that "claim preclusion and issue preclusion . . . are collectively referred to as 'res judicata.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (footnote omitted). "Federal courts must give the same preclusive effect to a state court judgment as the forum that rendered the judgment would have given it." *Sartin*, 535 F.3d at 287 (citations omitted). Thus, under the instant circumstances, I will apply West Virginia law.

---

[10] As a final note, Mr. Carper argues in his motion for summary judgment that "not only was Jay Carper denied his right to due process under the law but the release of the reason for his termination is a violation of equal protection when compared to similar disciplinary cases." (Mem. of Law in Supp. of Pl.'s Mot. for Summ. J. [Docket 84], at 16 (words appear in upper case lettering in memorandum because a section heading)). However, Mr. Carper did not bring an equal protection claim in his complaint. I need not analyze this contention.

The Supreme Court of Appeals of West Virginia has said that "res judicata or claim preclusion 'generally applies when there is a final judgment on the merits which precludes the parties or their privies from relitigating the issues that were decided or the issues that could have been decided in the earlier action.'" *Slider v. State Farm Mut. Auto. Ins. Co.*, 557 S.E.2d 883, 887 (W. Va. 2001) (citations omitted).[11] In West Virginia,

> Before the prosecution of a lawsuit may be barred on the basis of *res judicata*, three elements must be satisfied. First, there must have been a final adjudication on the merits in the prior action by a court having jurisdiction of the proceedings. Second, the two actions must involve either the same parties or persons in privity with those same parties. Third, the cause of action identified for resolution in the subsequent proceeding either must be identical to the cause of action determined in the prior action or must be such that it could have been resolved, had it been presented in the prior action.

Syl. Pt. 2, *Slider*, 557 S.E.2d 883 (quoting Syl. Pt. 4, *Blake v. Charleston Area Med. Ctr., Inc.*, 498 S.E.2d 41 (W. Va. 1997)). "The third prong . . . is most often the focal point." *Id.* at 887.

Here, as for the first element, there was a final adjudication on the merits in the Circuit Court of Clay County. The state court judge dismissed Ms. Cottrell, Ms. McLaughlin, Ms. Klotzbach, and Dr. Patel with prejudice in both their individual and official capacities after finding that they were immune from suit. (Circuit Ct. of Clay Cnty. Order [Docket 64-33], at 6-9; *id.* at 8 ("Accordingly, the Court finds that [these four defendants] are protected, as individuals, under West Virginia Code § 29-12A-1, et. seq., as each Defendant was acting reasonably within her official capacity, and therefore cannot be held individually liable under the allegations contained in the Complaint filed in this case."); *id.* at 9 (dismissing these defendants in their official capacity

---

[11] In their memorandum in support of their motion, the defendants apply the law of collateral estoppel to the issues in this case. However, in the interest of its underlying policies—"to permit repose on the part of defendants who have been subject to suit" and "to 'conserve[] judicial resources, and foster[] reliance on judicial action by minimizing the possibility of inconsistent decisions"—I find that the closely related doctrine of claim preclusion is better suited here. *See Slider*, 557 S.E.2d at 887.

with prejudice under West Virginia Code § 29-12A-1, et. seq., and because Mr. Carper "ha[d] not provided the Court with any allegations the above named Defendants acted outside of the scope of their employment with regard to the investigation and termination of the Plaintiff, nor has the Plaintiff provided any allegations that the above named Defendants' violated any clearly established laws")). As for the second element, Ms. Cottrell, Ms. McLaughlin, Ms. Klotzbach, and Dr. Patel were all sued by Mr. Carper in state court. Finally, as for the third element, claims for defamation of character, slander, defamation *per se*, and intentional infliction of emotional distress were also brought against these same defendants in the Circuit Court of Clay County. (*See id.* at 5). Mr. Carper has not pointed to any new evidence that persuades the court to revisit these claims. Thus, summary judgment is **GRANTED** in favor of Ms. Cottrell, Ms. McLaughlin, Ms. Klotzbach, and Dr. Patel on these causes of action.

### iii. Defamation Claims and Intentional Infliction of Emotional Distress Claim Against the Clay County Board of Health, Clay County Commission, Mr. Triplett

These four claims lack merit against the remaining defendants as well. One element of proving a defamation claim is publication. *See* Syl. Pt. 5, *Chafin v. Gibson*, 578 S.E.2d 361 (W. Va. 2003) (citation omitted). As I explain in depth above, Mr. Carper has failed to point to more than a scintilla of evidence demonstrating that the defendants publicly disclosed the reasons for his termination. Also, a plaintiff must prove that the alleged defamatory statement was false. *See id.* As I note above, Mr. Carper admits that it is not possible to demonstrate the veracity of the allegations asserted against him.

As for his intentional infliction of emotional distress claim, Mr. Carper has failed to point to any defendant conduct that was so "extreme or outrageous" as to "intentionally or recklessly

14

cause [him] severe emotional distress." (*See* Circuit Ct. of Clay Cnty. Order [Docket 64-33], at 17 (noting West Virginia's law on intentional infliction of emotional distress and quoting Syl. Pt. 1, *Harless v. First Nat'l Bank in Fairmont*, 289 S.E.2d 692 (W. Va. 1982)). The Supreme Court of Appeals of West Virginia has stated that:

> In order for a plaintiff to prevail on a claim for intentional or reckless infliction of emotional distress, four elements must be established. It must be shown: (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Syl. Pt. 3, *Travis*, 504 S.E.2d 419. Mr. Carper has not shown that these defendants committed acts that were "so extreme and outrageous as to exceed the bounds of decency." *Id.* He has not provided the court with more than a scintilla of evidence that these defendants intentionally scarred his reputation or publicly disclosed false charges asserted against him. As I note above, Mr. Carper has admitted multiple times that the record does not even prove that the allegations against him were false.

Although I view all underlying facts and inferences in the light most favorable to Mr. Carper in considering the defendants' motion, he nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor[.]" *Anderson*, 477 U.S. at 256. Mr. Carper has failed to fulfill this burden here. Therefore, the defendants' motion is **GRANTED** with respect to the defamation of character, slander, intentional infliction of emotional distress, and defamation *per se* claims against the Clay County Board of Health, Clay County Commission, and Mr. Triplett.

15

### iv. West Virginia Whistleblower, Wrongful Discharge, and Retaliatory Discharge Claims Against the Clay County Board of Health

Finally, Mr. Carper claims that the Clay County Board of Health is liable for violating the West Virginia Whistleblower Act, wrongful discharge, and retaliatory discharge. Mr. Carper alleges that he reported wrongdoing within the Clay County Health Department around 2007, 2009, and 2010. (Compl. [Docket 1], at 12). For example, Mr. Carper reported that Ms. Cottrell took birth control pills without authorization and improperly made a diagnosis while a nurse was not present. (*Id.*). Mr. Carper received a letter dismissing him from employment on August 24, 2011, effective September 8, 2011. (*Id.* at 10).

> The West Virginia Whistleblower Act prohibits an employer from
>
> discharg[ing], threaten[ing] or otherwise discriminat[ing] or retaliat[ing] against an employee by changing the employee's compensation, terms, conditions, location or privileges of employment because the employee, acting on his own volition, or a person acting on behalf of or under the direction of the employee, makes a good faith report or is about to report, verbally or in writing to the employer or appropriate authority an instance or wrongdoing or waste.

W. Va. Code § 6C-1-3(a). A wrongful discharge claim arises "where the employer's motivation for the discharge [of an employee] is to contravene some substantial public policy principle." Syl. Pt. 2, *Brown v. City of Montgomery*, 755 S.E.2d 653 (W. Va. 2014) (quoting Syl., *Harless v. First Nat'l Bank*, 246 S.E.2d 270 (W. Va. 1978)); *see Feliciano v. 7-Eleven, Inc.*, 559 S.E.2d 713, 723 (W. Va. 2001) (citations omitted) (listing four elements, including the *causation* element where "[t]he plaintiff's dismissal [must have been] motivated by conduct related to the public policy" and the *overriding justification* element where "[t]he employer [must have] lacked overriding legitimate business justification for the dismissal"). Lastly, a prima facie retaliatory discharge claim under the West Virginia Human Rights Act exists when

16

> the complainant . . . prove[s] by a preponderance of the evidence (1) that the complainant engaged in protected activity, (2) that complainant's employer was aware of the protected activities, (3) that complainant was subsequently discharged and (absent other evidence tending to establish a retaliatory motivation) (4) that complainant's discharge followed his or he protected activities within such period of time that the court can infer retaliatory motivation.

Syl. Pt. 4, *Frank's Shoe Store v. W. Va. Human Rights Com'n*, 365 S.E.2d 251 (W. Va. 1986).

Related to all three of these claims, Mr. Carper has failed to point to more than a scintilla of evidence demonstrating causation between his reports of wrongdoing and his discharge from employment. Though he alleges that a damaging computer report was generated close in time to some incidents he reported, (Compl. [Docket 1], at 14), Mr. Carper was unable to provide specific evidentiary citations supporting these three causes of action at the Motion Hearing. He only offered general references to the record. *See generally* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record"). Moreover, Mr. Carper admitted at the Motion Hearing that he did not address his whistleblower contention in his original oversized response to the defendant's summary judgment motion. When asked whether he was abandoning his whistleblower claim, Mr. Carper did not give a direct answer to the court, but stated that his primary concern is the § 1983 due process claim.

Mr. Carper has simply failed to carry his burden to overcome summary judgment on his whistleblower, wrongful discharge, and retaliatory discharge claims against the Clay County Board of Health, Clay County Health Department. Thus, the defendants' motion is **GRANTED** with respect to these causes of action. In sum, the defendants' motion for summary judgment is **GRANTED** in full.

### B. Plaintiff's Motion for Summary Judgment [Docket 83]

Because I **GRANT** the defendant's motion for summary judgment—and because of the reasoning in my analysis above—the plaintiff's motion for summary judgment is **DENIED**.

## IV. Conclusion

For the reasons explained above, the defendants' Clay County Board of Health, Clay County Department, Nancy Cottrell, Joyce McLaughlin, Linda Klotzbach, Dr. Leela Patel, Clay County Commission, and Peter Triplett's Motion for Summary Judgment [Docket 64] is **GRANTED**. The plaintiff's Motion for Summary Judgment Against the Clay County Board of Health Defendants [Docket 83] is **DENIED**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: July 9, 2015

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE